Max. N. Wellman (SBN 291814)
Email: mwellman@venable.com
VENABLE LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:  310.229.9900
Facsimile:   310.229.9901

Michael B. MacWilliams (*pro hac vice* to be filed)
Email: mbmacwilliams@venable.com
Elizabeth C. Rinehart (*pro hac vice* to be filed)
Email: lcrinehart@venable.com
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Telephone:  410.244.7400
Facsimile:    410.244.7742

Attorneys for Plaintiff JRK Residential Group

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JRK RESIDENTIAL GROUP,<br><br>  Plaintiff,<br><br>  v.<br><br>NEIGHBORHOOD PAY SERVICES, LLC,<br><br>  Defendant. | Case No.  2:24-cv-2293<br><br>**COMPLAINT FOR INJUNCTION IN AID OF ARBITRATION** |

Plaintiff JRK Residential Group ("JRK") by and through its undersigned counsel, brings this Complaint against Defendant Neighborhood Pay Services, LLC ("NPS") in aid of arbitration and alleges as follows:

## INTRODUCTION

1. JRK's affiliated entities own or manage residential properties. Under some circumstances (*e.g.*, to reduce the risk of default and ensure prompt and complete payment), a prospective tenant may use rent assurance services when renting an apartment. For over six years JRK and NPS had a well-functioning relationship for NPS's rent assurance services: NPS collected rent from tenants and regularly transmitted the tenants' rent payments to JRK, then invoiced JRK for service fees pursuant to the parties' agreement.

2. But when JRK notified NPS that it was terminating their contract and would wind down NPS's services, NPS retaliated.

3. In December 2023, NPS stopped transmitting to JRK the funds it collected from JRK's tenants and, instead, kept those tenant funds for itself. There is no valid basis for NPS to withhold tenant funds from JRK – it is contrary to the parties' contract and the law, and it breaches the trust of both JRK (which trusted NPS to collect and transmit funds) and the tenants (who trusted NPS to send their rent payments to JRK).

4. NPS claims the tenant funds it retained are an offset of service fees JRK would have paid through the end of 2024, but there is no agreement under which JRK is required to pay fees through that time period. Even if there was, it is improper for NPS to withhold tenants' rent payments as a means of paying itself service fees that allegedly would eventually be owed by JRK.

5. This was not a one-time error in judgment by NPS. NPS continues to collect and withhold tenant funds in the preceding two weeks. As of the filing of this Complaint, NPS has refused to transmit over $250,000 of tenants' rent payments that it collected and is obligated to transfer to JRK.

6. JRK has filed an arbitration demand pursuant to the parties' agreement, but unless this Court enjoins NPS from withholding further tenant funds while the parties litigate in arbitration, JRK is at risk of further irreparable harm.

## THE PARTIES

7. Plaintiff JRK is a corporation organized and existing under the laws of Nevada with its principal place of business at 11766 Wilshire Boulevard, 15th Floor, Los Angeles, California 90025.

8. Defendant NPS is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 202 Reservoir Street, Suite 5, Needham Heights, Massachusetts 02494.

## JURISDICTION AND VENUE

9. This Court has jurisdiction based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and to the best of JRK's knowledge, information, and belief, none of the members of NPS, are, directly or indirectly, citizens of Nevada or California.

10. This Court has personal jurisdiction over NPS because NPS has transacted business within this State and has committed torts outside this State that have caused injury within this State. NPS has also subjected itself to the personal jurisdiction of this Court as a term of the contract JRK seeks the Court's assistance in enforcing.

11. Venue is proper in this Court pursuant to contractual specification of this venue by the parties in the contract JRK seeks the Court's assistance in enforcing. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to JRK's claim occurred in this district.

## FACTUAL BACKGROUND

12. The dispute underlying this Complaint relates to NPS's unlawful withholding of JRK's tenant funds. The injunctive relief sought herein is urgent, because if it is not granted, and NPS is not stopped from continuing its unlawful activities, JRK's relationship with its tenants will be irreparably harmed.

13. JRK and NPS entered into a Property Company Services Agreement ("Agreement") on March 3, 2017. The Agreement obligates NPS to provide rent assurance services in connection with tenants of various JRK-affiliated entities that own or manage residential apartment properties. (A copy of the Agreement, together with all amendments, supplements, and exhibits thereto, is attached as Exhibit A.)

14. NPS agreed to collect rent from the residential tenants and transfer the funds to JRK; JRK agreed to pay annual subscription fees and monthly service fees.

15. Paragraph 6(a) of the Agreement specifies an initial term of one year from the date it was signed and provides the Agreement would then proceed on a month-to-month basis.

16. JRK and NPS continued to operate under the March 2017 Term and Termination provision in paragraph 6(a), which provides that the Agreement renewed monthly and that either party could terminate by providing 30 days' written notice. JRK signed addenda regarding service fees and covered properties, but JRK did not sign (or in any way agree to) any addenda agreeing to modify paragraph 6(a) of the Agreement, meaning that the parties continued to operate on a month-to-month basis.

17. On or about November of 2022, NPS proposed a new addendum that would have amended the Agreement to include another two-year term, after which the amended Agreement would renew annually. JRK refused to execute the addendum because JRK would not agree to a two-year term. The parties continued to operate under the terms of the Agreement, and NPS accepted payments from JRK in keeping with the terms of the Agreement as amended by subsequent addenda.

18. Over the course of the parties' dealings, NPS never retained tenant funds as a means of collecting its fees. In all cases, NPS transferred the entirety of the tenants' payments to JRK and then submitted an invoice for its fees to JRK.

19. In November 2023, JRK provided NPS with 30 days' written notice of JRK's intention to terminate its relationship with NPS according to Paragraph 6(a) of the Agreement.

20. In response, NPS asserted that JRK owed NPS approximately $144,500.00, which represented what NPS contended JRK currently owed NPS and what would have been JRK's fees through December 2024.

21. NPS's position was, in effect, an attempt to enforce the two-year term JRK had refused to accept. JRK rejected NPS's claim, but, per the Agreement, permitted NPS to continuing servicing JRK tenants for six months from the termination date or until the termination of all of NPS's contracts with JRK tenants, whichever occurred first.

22. JRK discovered in January 2024 that NPS had withheld $129,080.93 collected from JRK's tenants and owed to JRK, with NPS contending that this amount represented what JRK would have paid to NPS through 2024 if JRK had not terminated the Agreement.

23. JRK demanded that NPS return the funds, but NPS has refused to return the withheld funds and continues to sweep additional JRK tenant funds, most recently by withholding March 2024 disbursements, in the additional amount of $124,057.95. NPS's continuing malfeasance threatens additional unlawfully withheld funds in excess of the jurisdictional minimum.

24. Per Paragraph 5(n)(1) of the Agreement, NPS is required to maintain "a blanket fidelity bond with a responsible surety and with broad coverage of all officers, employees or other persons acting on behalf of NPS with regard to the Rent Payments or handling of funds, money, documents and papers relating to the Rent Payments. Any such fidelity bond shall protect at a minimum against losses

incurred by the Landlord, including, but not limited to, as a result of theft, embezzlement and fraud or any other illegal or unlawful activity by NPS. The minimum coverage under any such bond for the benefit of Landlord (and any other landlord clients of NPS) shall be the greater of $2,000,000 or such amount as is necessary to fund one (1) month's rent for each Lease at any time during the Term."

25. Also pursuant to Paragraph 5(n)(1), NPS must provide a copy of the fidelity bond upon JRK's written request.

26. JRK has twice requested in writing that NPS provide JRK a copy of the fidelity bond, but NPS has refused to provide it, leading JRK to believe that no such bond is in place.

27. JRK has filed an Arbitration Demand with the American Arbitration Association to resolve the dispute as per Paragraph 20 of the Agreement. JRK files this action for the purpose of seeking a preliminary injunction barring further misappropriations by NPS, and to thereby preserve the status quo pending the outcome of the arbitration, which is permitted under Paragraph 20.

## CLAIM FOR RELIEF

### (Injunctive Relief Pending Arbitration)

28. JRK re-alleges and incorporates herein by reference each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

29. JRK has a likelihood of success on the merits, or at least there are serious questions going to the merits. NPS has no legal basis for withholding rent payments from JRK, but continues to do so. JRK requests that the Court issue a preliminary injunction prohibiting NPS from withholding any tenant payments owed to JRK, in order to preserve the status quo pending completion of arbitration. If JRK does not receive these payments, it will have to pursue tenants for the missing rent payments and will have to potentially initiate litigation against its tenants for these payments.

30. Unless the wrongful conduct of NPS is enjoined and restrained by order of this Court, JRK will suffer irreparable injury from the inevitable deterioration of the landlord-tenant relationship caused by NPS. JRK reasonably and contractually relied on NPS to transfer tenants' rent payments to JRK, but NPS's refusal to transfer those funds may cause tenants to be in default of their rent obligations, require tenants to make duplicate payments directly to JRK to avoid default, or require JRK to pursue tenants for missing rent payments.

31. An injunction also is necessary because NPS has refused to provide the fidelity bond to JRK, indicating that NPS likely does not have the bond in place and is engaged in the recent money grab due to financially precarious circumstances constituting another irreparable harm that JRK will suffer without an injunction, as JRK may not be able to recover the funds that NPS is withholding. To the extent that JRK is struggling financially and its continued withholding of tenant funds causes tenants to have putative claims against NPS, those tenants may also be without a viable remedy. Thus, JRK requests that this Court require that NPS produce a copy of its fidelity bond to JRK. JRK also requests, to prevent further dissipation of tenant funds, that this Court require: 1) that NPS provide to JRK an accounting of tenant funds it has collected since November 2023; 2) that NPS post a bond in the amount of tenant funds it has withheld ($253,138.88); or 3) that NPS put the amount of tenant funds it has withheld ($253,138.88) into escrow pending the resolution of the arbitration.

32. JRK faces significant harm, while NPS will not be harmed by a preliminary injunction, so the equities favor an injunction.

33. A preliminary injunction will not harm third parties, but NPS's withholding of tenant funds does negatively affect third parties, so issuing an injunction is favored, or at least neutral with respect to the public interest.

# PRAYER FOR RELIEF

WHEREFORE, JRK requests that an injunction be entered in its favor and against NPS as follows:

1. For a preliminary and permanent injunction that:

   (a) enjoins NPS from withholding tenant funds from JRK until the conclusion of the arbitration;

   (b) requires that NPS produce a copy of its fidelity bond to JRK;

   (c) requires: 1) that NPS provide to JRK an accounting of tenant funds it has collected since November 2023; 2) that NPS post a bond in the amount of tenant funds it has withheld ($253,138.88); or 3) that NPS put the amount of tenant funds it has withheld ($253,138.88) into escrow pending the resolution of the arbitration.

2. For such other and further relief as the Court deems just and proper.

Dated: March 20, 2024         VENABLE LLP

By: /s/ Max N. Wellman
    Michael B. MacWilliams
    Elizabeth C. Rinehart
    Max N. Wellman
    Attorneys for Plaintiff
    JRK Residential Group